# In the United States District Court for the Southern District of Georgia Waycross Division

```
JUSTIN ISAAK DWAIN JAMMISON,

     Plaintiff,

     v.                                    CV 5:24-094

TIMOTHY WARD; ALAN WATSON;
PETER ADAMS; AHMED HOLT; JACK
SAULS a/k/a Randy; LATOYA
DOUCETTE; ROY ODUM; ERIC COX;
LUTRIA JONES; JUANDA CRAWFORD;
LIEUTENANT TERRY HENDERSON; and
JOHN DOES #1-3,

     Defendants.
```

### ORDER

Before the Court is Defendants' motion to dismiss. Dkt. No. 23. The motion has been fully briefed, dkt. nos. 23, 25, 27, and is ripe for review.

### BACKGROUND

Plaintiff Justin Jammison brings this civil rights action against Georgia Department of Corrections Defendants, pursuant to 42 U.S.C. § 1983, for their alleged failure to protect him from an assault by other inmates while he was housed at Ware State Prison (Georgia) on November 30, 2022. Dkt. No. 1 at 1-2, 6-7, 20-22. Plaintiff alleges he was brutally attacked by inmates who were known members of the Bloods gang in retaliation for Plaintiff's murder of a Bloods' gang member. Id. ¶ 9.

Defendants collectively move to dismiss Plaintiff's complaint, arguing he failed to exhaust administrative remedies before filing suit, as required by the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e ("PLRA").

## LEGAL AUTHORITY

"Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008) (footnotes omitted) (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) ("[W]here a factual issue arises in connection with a jurisdictional *or related type of motion*, . . . the court has a broad discretion as to the method to be used in resolving the factual dispute." (emphasis added) (citing Moore's Fed. Practice ¶ 56.03 (2d ed. 1987))))).

## DISCUSSION

The Eleventh Circuit has held that "deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of

the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." Id. "If the complaint is not subject to dismissal at the first step, . . . the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Id. "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Id.

In this case, Plaintiff concedes that he did not exhaust his administrative remedies. See Dkt. No. 25 at 1-2. Instead, he argues such remedies were unavailable to him. Id.

"The Supreme Court has provided an overarching framework for evaluating the 'availability' of administrative remedies in Ross v. Blake." Geter v. Baldwin State Prison, 974 F.3d 1348, 1355 (11th Cir. 2020) (citing Ross v. Blake, 578 U.S. 632 (2016)). First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Ross, 578 U.S. at 643. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it." Id. at 644. Third, an administrative procedure is unavailable "when prison administrators thwart inmates from taking advantage of a grievance

3

process through machination, misrepresentation, or intimidation." Id. (noting that this prong applies when officials mislead or threaten individual inmates to prevent their use of otherwise proper procedures).

The Court first turns to the factual allegations in Defendants' motion and Plaintiff's response to determine whether administrative remedies were available to Plaintiff.

### I. Defendants' Motion to Dismiss

In Defendants' motion to dismiss, they argue that a prison grievance process was available to Plaintiff and that Plaintiff "failed to submit a grievance and complete both steps under the grievance process for his claims before bringing this action." Dkt. No. 23-1 at 4-5. Attached to Defendants' motion is the declaration of Kimberly Lowe, the Grievance Coordinator at Ware State Prison where Plaintiff was incarcerated. Dkt. No. 23-2 ¶ 2. Attached to Ms. Lowe's declaration is a copy of the Georgia Department of Corrections Standard Operating Procedure 227.02, Statewide Grievance Procedure, which has an effective date of May 10, 2019 (the "Grievance SOP"). Id. at 8-26. Ms. Lowe declares that, upon entering the custody of the Georgia Department of Corrections, inmates are provided an oral explanation of the grievance process, as well as a copy of the Orientation Handbook for Offenders, which includes instructions on the grievance procedure. Id. ¶ 4. Ms. Lowe also declares that inmates have

access to a copy of the Grievance SOP at the facility or center library. Id.

With the exception of certain matters that are designated as "Non-Grievable Issues,"[1] the Grievance SOP is applicable to "any condition, policy, procedure, or action or lack thereof that personally affects the offender." Id. at 11. The Grievance SOP consists of two steps: 1) Original Grievance and 2) Central Office Appeal. Id. at 15. Under Step 1, an inmate first submits a completed Grievance Form. Id. at 15, 27. An inmate is required to submit the Grievance Form no later than ten calendar days from the date that he knew, or should have known, of the facts giving rise to the grievance. Id. Grievances filed later than ten days may only be considered upon "Good Cause." Id. "Good Cause" includes when an offender has a serious illness or is being housed away from the facility for a court production or for medical treatment. Id. ¶ 8. A grievance that is accepted after initial screening will be processed, which includes staff investigation and report, review by the Grievance Coordinator, and a recommendation to the Warden. Id. at 16-18. The Warden or designee then reviews the staff report and recommendation and issues a written decision, which the inmate's counselor will then

---

[1] The Grievance SOP states that "housing assignments, program assignments, security classifications or work assignments" are non-grievable issues "unless there is an alleged threat to the Offender's health or safety." Dkt. No. 23-2 at 11, 12.

5

give to the inmate. Id. at 18. The Grievance SOP provides for the Warden's response to be given to the inmate within forty calendar days from the date the counselor received the Grievance Form, with a possible one-time ten calendar day extension. Id.

Under Step 2, the inmate may file the Central Office Appeal (i) after the inmate receives the Warden's response to the Original Grievance; or (ii) after the time allowed for the Warden's decision to be given to the inmate has expired. Id. at 21. The Central Office Appeal form is attached to the Grievance SOP. Id. at 32. An inmate is required to submit the Central Office Appeal within seven calendar days from the Warden's response date, but "[t]he Grievance Coordinator or Commissioner's Designee may waive this time limit for Good Cause." Id. at 21.

An inmate grievance is logged into a central database and assigned a control number at or near the time that the grievance is received. Id. ¶ 12; see also id. at 18. A Grievance History can be printed from the database showing all grievances filed by an inmate during his incarceration, including grievances from all facilities where the inmate has been incarcerated. Id. ¶ 12. Plaintiff was housed at Ware State Prison from September 14, 2022 to November 15, 2023. Id. at 43. During that time, Plaintiff filed two grievances. Id. at 45. In the first one, dated March 18, 2023, Plaintiff requests a hygiene pack and a telephone. Id. at 47. In the second one, dated October 18, 2023, Plaintiff simply

6

provides his new Georgia Department of Corrections identification number and requests no relief. Id. at 50.

"[T]he burden is on the defendant to show an available administrative remedy." Geter, 974 F.3d at 1356. Once the defendant has met that burden, as Defendants have done here, "the burden of going forward shifts to the plaintiff, who, pursuant to Turner, must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him." Id. (citing Turner, 541 F.3d at 1085).

In Plaintiff's response, he alleges the administrative remedies under the PLRA were unavailable to him for all three reasons propounded by the U.S. Supreme Court in Ross. Plaintiff asserts "(1) pursuant to the U.S. Department of Justice Civil Rights Division's October 1, 2024 Investigation of Georgia Prisons' Report, it is clear that Georgia prison officials refuse to follow their established grievance policy, and therefore, the administrative remedies under the PLRA are not available and exhaustion is not required; (2) the Georgia grievance procedure . . . is so opaque that it is, practically speaking, incapable of use; [and] (3) pursuant to the U.S. Department of Justice Civil Rights Division's October 1, 2024 Investigation of Georgia Prison's Report, it is clear that Georgia prison officials prevent the filing of grievances through machination, misrepresentation, or intimidation, and therefore, the

7

administrative remedies under the PLRA are not available and exhaustion is not required." Dkt. No. 25 at 3-4.

Nearly all of Plaintiff's argument for the unavailability of administrative remedies focuses on the objective component of Turner, that is, that a reasonable inmate of ordinary firmness and fortitude would be deterred from lodging a grievance or pursuing a particular part of the process. Turner, 541 F.3d at 1085. Plaintiff makes no allegation that administrative remedies were *subjectively* unavailable to him, that is, that Plaintiff himself was deterred from lodging a grievance or pursuing a particular part of the process. Id.

The closest Plaintiff comes to alleging subjective unavailability is when he argues a preemptive grievance (before the November, 30, 2022 attack) would have been a dead end. Plaintiff states that if he "had filed a grievance regarding his housing situation prior to the November 30, 2022 assault, it would have been deemed a housing assignment grievance, which is a 'Non-Grievable' issue under the procedure." Dkt. No. 25 at 8. Plaintiff points out that "he was not aware of the gang affiliations of all the inmates on his unit" and "he had not been previously threatened by the offenders." Id. Indeed, the Grievance SOP provides that "housing assignments" are non-grievable issues "unless there is an alleged threat to the Offender's health or safety." Dkt. No. 23-2 at 11, 12. Yet,

8

Plaintiff never alleges that *he was actually deterred* from submitting a grievance due to these considerations.

Regardless, the Court need not decide whether Plaintiff was deterred from submitting a preemptive grievance, because Defendants argue that, in order to exhaust his administrative remedies, Plaintiff was also required by the PLRA to file a grievance *after* the November 30, 2022 attack. Dkt. No. 27 at 7-8. After all, Plaintiff's complaint is based on his allegation that Defendants failed to protect him from known gang members, a failure which resulted in Plaintiff being injured. See Dkt. No. 1. But Plaintiff attempts to argue that a post-attack grievance, too, would have led to a dead end. Dkt. No. 25 at 9. Plaintiff states that, after he was attacked, "he was promptly treated with proper medical care, taken to the hospital, and put in secure housing . . . . After the incident, Defendants did make housing changes in order to ensure the safety of Plaintiff, and Plaintiff does not take issue with his housing or safety since the incident." Id. at 9-10. Plaintiff states he "was eventually transferred out of Ware State Prison and his housing has not been an issue since the November 30, 202[2] attack." Id. at 10.

Plaintiff's argument is essentially that exhausting his administrative remedies was unnecessary after the attack because, at that point, the prison had taken corrective action. This argument was rejected by the U.S. Supreme Court in Ross. There,

9

the Supreme Court examined the Fourth Circuit's "extra-textual exception" to the PLRA's exhaustion requirement. 578 U.S. at 637. The exception provided that "there are certain 'special circumstances' in which, though administrative remedies may have been available[,] the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified." Id. (quoting Blake v. Ross, 787 F.3d 693, 698 (4th Cir. 2015)). The Fourth Circuit held that the offender's failure to exhaust "fit within that exception because he reasonably thought that 'the [internal investigation unit's] investigation removed his complaint from the typical [administrative remedy procedure] process.'" Id. (quoting Blake, 787 F.3d at 700). The Supreme Court rejected the Fourth Circuit's approach, stating "[s]tatutory text and history alike foreclose the Fourth Circuit's adoption of a 'special circumstances' exception to [the PLRA's exhaustion] mandate." Id. at 638.

Since Ross, courts have rejected the argument that a prison's separate action with regard to an incident can excuse an inmate's failure to use the available administrative grievance process as the PLRA requires. See Griggs v. Holt, No. 1:17cv089, 2018 WL 5283448, at *7 (S.D. Ga. Oct. 24, 2018) ("[A] related internal investigation does not, by itself, satisfy the PLRA's exhaustion requirement."). Indeed, "the PLRA exhaustion requirement requires the prisoner to exhaust the remedies that are available to *him*,

10

not separate and independent administrative processes." Griggs, 2018 WL 5283448, at *7 (emphasis in original). According to the Supreme Court in Ross, "Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." 578 U.S. at 648. To make an exception for Plaintiff's failure to exhaust his administrative remedies because Ware State Prison did everything right *following* the attack would be to create a special circumstances exception to the PLRA's exhaustion requirement.

When viewing Plaintiff's version of the facts as true, the Court finds that Plaintiff's complaint does not survive Turner's Step 1. First, Defendants have shown that the Grievance SOP covers Plaintiff's grievance regarding Ware State Prison's failure to protect him from inmates affiliated with the Bloods gang. See Dkt. No. 23-2 at 11 (The Grievance SOP covers "any . . . action *or lack thereof* that personally affects the offender." (emphasis added)); see also Dkt. No. 1 (Plaintiff alleging in his complaint that Defendants failed to protect him from known gang members). Defendants have met their burden to show an available administrative remedy through the Grievance SOP. Geter, 974 F.3d at 1356 ("[T]he burden is on the defendant to show an available administrative remedy."). The Court further finds that Plaintiff has failed to allege the Grievance SOP was subjectively unavailable to him. Id. (Once the defendant has met shown an available

11

administrative remedy, "the burden of going forward shifts to the plaintiff, who, pursuant to Turner, must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him." (citing Turner, 541 F.3d at 1085)). Therefore, Defendants are "entitled to have the complaint dismissed for failure to exhaust administrative remedies," and Plaintiff's complaint "must be dismissed." Turner, 541 F.3d at 1082.

## II. Plaintiff's Motion for Discovery

Alternatively, Plaintiff states that should the Court find Plaintiff has not alleged sufficient facts to show the unavailability of administrative remedies "in Georgia due to the way the grievance procedure is used in practice, Plaintiff requests time to perform limited discovery in order to further develop a record as to the Ware State Prison Officials failing to follow established grievance policy and Ware State Prison officials preventing the filing of grievances through machination, misrepresentation, or intimidation." Dkt. No. 25 at 4.

First, Plaintiff's request for discovery is procedurally improper. Posner v. Essex Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999) ("Where a request for [affirmative relief] simply is imbedded within an opposition memorandum, the issue has not been raised properly."). Second, such discovery would not help Plaintiff. While Plaintiff's proposed discovery might allow him

to collect evidence that Ware State Prison's Grievance SOP was objectively unavailable, Plaintiff would still fail to show that Plaintiff *himself* was deterred from lodging a grievance or pursuing a particular part of the process. Turner, 541 F.3d at 1085. Finally, Plaintiff had "sufficient opportunity to develop a record" with regard to the subjective unavailability of administrative remedies. Bryant, 530 F.3d at 1376. Plaintiff himself possesses that information, as it concerns his personal experience—whether he was personally deterred from engaging in the administrative process. Plaintiff simply failed to allege any facts to support a showing of unavailability of administrative remedies.

## CONCLUSION

Defendants' motion to dismiss, dkt. no. 23, is **GRANTED**. Plaintiff's complaint is **DISMISSED** for failure to exhaust his administrative remedies, as required by the PLRA. The motion hearing scheduled for August 1, 2025 is **CANCELED**. The Clerk is **DIRECTED** to close this case.

**SO ORDERED**, this 29th day of April, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

13